NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
JULIA S. CHOE (Cal. Bar No. 287038)
Assistant United States Attorney
Deputy Chief, General crimes Section
      1500 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-6530
      Facsimile: (213) 894-3713
      E-mail:   Julia.Choe@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 19-0071-ODW-1 |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION |
| v. | Hearing Date: November 30, 2020 |
| TIMOTHY DALTON VAUGHN, *et al.*, | Hearing Time: 10:00 a.m. |
| Defendant. | |

     Plaintiff United States of America, by and through its counsel
of record, the United States Attorney for the Central District of
California and Assistant United States Attorney Julia Choe, hereby
files its Sentencing Position.

     This Sentencing Position is based upon the attached memorandum
of points and authorities, the files and records in this case, the
Presentence Report, the Presentence recommendation letter, and such

//

//

1 | further evidence and argument as the Court may wish to consider at
2 | the time of sentencing.

3

4 | Dated: November 16, 2020        Respectfully submitted,

5 |         NICOLA T. HANNA
        United States Attorney

6

7 |         BRANDON D. FOX
        Assistant United States Attorney
        Chief, Criminal Division

8

9 | */s/ Julia S. Choe*

10 | _____

11 | JULIA S. CHOE
Assistant United States Attorney

12

13 | Attorneys for Plaintiff
UNITED STATES OF AMERICA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Before the Court is a defendant who conspired to falsely report the hijacking of a flight traveling from London to San Francisco; who helped send hoax bomb and rocket-propelled-grenade threats to U.S. schools; who extorted a Long Beach company and then attacked its server when it did not comply; and who possessed graphic and violent images of child pornography.

These were not just "Internet crimes" or the pranks and hijinks of a mischievous youngster.  The Internet, when used in the way that defendant did, is a serious and dangerous tool that can wreak real-life damage and real-life terror.  Indeed, defendant's various crimes were designed to inflict fear and pain on this country's most sensitive targets -- airplanes, schools, and children.  The Court should sentence the defendant in accordance with the scale of those crimes.

In connection with these crimes, on November 25, 2019, defendant Timothy Dalton Vaughn pled guilty to a one-count information, which charges him with Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).  (Dkts. 42, 33 ("Plea").)  Defendant also pled guilty to counts one and ten of the indictment, which charge him with Conspiracy to Convey Threats to Injure in Interstate Commerce, Convey False Information Concerning Use of an Explosive Device, and Intentionally Damage a Computer by Knowing Transmission, in violation

of 18 U.S.C. § 371; and Intentionally Damaging a Computer by Knowing Transmission, in violation of 18 U.S.C. § 1030(a)(5)(A).  (Id.)[1]

In the Amended Presentence Investigation Report ("PSR"), the Probation Office calculated a Total Offense Level of 28, and determined that the defendant falls within Criminal History Category I, resulting in an advisory guidelines range of 78-97 months' imprisonment.  (Dkt. 53 ("PSR") at 4.)  The Probation Office also recommended a sentence of 60 months' imprisonment on each count, to be served concurrently, as well as lifetime supervised release, restitution in the amount of $6,463, and a special assessment of $300.  (Dkt. 52 ("PSR Rec") at 1-2.)

The government concurs with the Probation Office's factual findings regarding defendant's offense conduct and criminal history, and the PSR's calculations with regards to the applicable Guidelines level.  Under the applicable advisory guidelines range, and given the seriousness of the crimes charged in this case, the government believes that a Guidelines custodial sentence of 78 months is appropriate.

## II.  STATEMENT OF FACTS

Defendant's criminal conduct affected a number of victims across the country.

### A.   Defendant's Conspiracy to Send Hoax Threats

During the relevant time periods, defendant was a member of the "Apophis Squad," a criminal consortium of hackers located around the world that conspired together to conduct cyber and swatting attacks

---

[1] Co-defendant George Duke-Cohan was sentenced to approximately three years' imprisonment in the United Kingdom in connection with the hoax airplane threat.

2

against victims in the U.S. and the U.K.  (PSR ¶ 18.)  His alias was "@wantedbyfeds" and "@Hacker_R_US."  (PSR ¶ 19.)  Defendant and his co-conspirators sought to, essentially, use the Internet to create chaos in the world.

One method of doing so was by sending hoax bomb threats to school districts.  Defendant obtained the email addresses of at least 86 school superintendents and personnel, and provided them to his co-conspirator for use in those threats.  (PSR ¶ 22; Plea at 14-15.) Those emails included: threats that a bullied student was coming to school with three bombs and a .22 caliber handgun to shoot staff and students; emails claiming that student had two bombs made of ammonium nitrate/fuel oil; and emails stating that rocket-propelled grenade heads had been placed under two school buses, and four landmines placed on the sports field.  (PSR ¶ 23; Plea at 14-15.)  As a result of these serious threats, schools in Emeryville, California and Jefferson County, New York, were forced to close.  (PSR ¶ 24.)

Defendant also assisted in the false hijacking report of United Airlines flight 949 traveling from London to San Francisco.  (PSR ¶ 25; Plea at 16.)  Defendant obtained a copy of the flight manifest and instructed his co-conspirator to report that he was the father of a passenger who had called him to report that four men with weapons and explosives had hijacked the plane.  (PSR ¶ 25; Plea at 16.)  When that flight landed, law enforcement proceeded with full tactical hijack protocol; the plane was quarantined and the 380 passengers and crew were detained while every person was searched.  (PSR ¶ 26.)

**B.  Defendant's Extortion and Attack of a Long Beach Company**

Defendant acted alone as well.  On January 14, 2018, he sent an email to a motor sports racing company in Long Beach, California.

3

demanding $20,000 in bitcoin to stop DDoS attacks[2] on the company's website, hoonigan.com.  (PSR ¶ 28.)  When the company did not pay, defendant caused a DDoS attack on the website, rendering it inoperable for three days.  (PSR ¶ 29; Plea at 17.)

### C.   Defendant's Possession of Child Pornography

Defendant also possessed child pornography, which included graphic imagery of child abuse.  Among the 121 images and 72 videos of child pornography included the following:

- An approximate two-minute video named "_Pthc_-_yo_stab_anal_vagina.mp4," which depicts a nude toddler lying on her back being digitally penetrated in her anus by an adult male;

- An approximate three-and-a-half minute video named "(JM) Updated-2017 Anal 8yo German Girl with daddy (Mix 288p and 1080p + Sub).mp4," which depicts a nude prepubescent girl (approximately eight years old) lying on her back and being penetrated in her anus by an adult male penis; and

- An image depicting a 13-year-old victim using her fingers to spread open her vagina.

(PSR ¶ 30; Plea at 17-18.)

### III. THE COURT SHOULD SENTENCE DEFENDANT WITHIN THE GUIDELINE RANGE

### A.   Guideline Calculations and The Plea Agreement

In the plea agreement, the parties agreed to the following offense level and specific offense characteristics:

//

//

//

---

[2] A DDoS attack is a method by which a victim's website is flooded with Internet traffic, rendering it unavailable for normal visits.

4

<u>Conspiracy</u>
```
      Base Offense Level:          12 [U.S.S.G. § 2A6.1(a)]
      More than Two Threats:       +2 [U.S.S.G. § 2A6.1(b)(2)(A)]
      Substantial Disruption to
      Public Services:             +4 [U.S.S.G. § 2A6.1(b)(4)(A)]
```

**Total: 18**

<u>Intentionally Damaging by Knowing Transmission</u>
```
      Base Offense Level:           6 [U.S.S.G. § 2B1.1(a)(2)]
      Sophisticated Means:         +2 [U.S.S.G. § 2B1.1(b)(10)]
      1030(a)(5)(A):               +4 [U.S.S.G. §
                                      2B1.1(b)(19)(A)(ii)]
```

**Total: 12**

<u>Possession of Child Pornography</u>
```
      Base Offense Level:          18 [U.S.S.G. § 2G2.2(a)(1)]
      Prepubescent Minor:          +2 [U.S.S.G. § 2G2.2(b)(2)]
      Exploitation of
      Infant/Toddler:              +4 [U.S.S.G. § 2G2.2(b)(4)]
      Use of Computer:             +2 [U.S.S.G. § 2G2.2(b)(6)]
      600 or More Images:          +5 [U.S.S.G. § 2G2.2(b)(7)(D)]
```

**Total: 31**

**Total Offense Level: 31**                    **[U.S.S.G. § 3D1.4]**

(Plea ¶ 20.)  The government also agreed to recommend a three-level reduction for acceptance of responsibility at the time of sentencing. (<u>Id.</u> ¶ 3.)  This results in an agreed-upon total offense level of 28.[3]

The PSR calculated the offense levels as set forth above, except for an additional +4 enhancement for an intended loss of above $15,000 for Count 10, Intentionally Damaging by Knowing Transmission. (PSR ¶ 57.)  However, because the greatest offense level derived from the Child Pornography Possession count, the total offense level that

---

[3] In the plea agreement, the government agreed not to seek a sentence above the mid-point of the sentencing range.  (Plea ¶ 3(e).) In accordance with the plea agreement, the government in this sentencing paper is not seeking to advocate for a sentence above the mid-point, and indeed is seeking a low-end sentence.

5

the PSR found is also 31 (or 28 with acceptance of responsibility), as calculated by the plea agreement.  (PSR ¶¶ 76, 82.)

The PSR determined that defendant's criminal history category is I (PSR ¶ 88), with zero criminal history points, with which the government agrees.  Accordingly, defendant's Guideline range is 78-97 months' incarceration.  The U.S. Probation Officer did not identify any factors that would warrant a departure from the Guideline range. (PSR ¶ 160.)  However, the Probation Officer did identify factors that may warrant a sentence outside of the advisory guideline system, including defendant's educational history, mental and emotional conditions, employment history, disadvantaged upbringing, and post-offense rehabilitation.  (PSR ¶ 161.)  The government disagrees, and as set forth below, submits that these factors do not warrant a sentence outside of the Guidelines range pursuant to 18 U.S.C. § 3553(b)(2)(A)(ii).

**B.    A Sentence of 78 Months' Incarceration is Sufficient and Not Greater Than Necessary to Account for Defendant's Many Serious Crimes**

1.    <u>Defendant's Hoax Threats Were Dangerous and Egregious</u>

It is no accident that defendant conspired to send hoax threats to a flight and to schools:  those are the very places that are most vulnerable and most sensitive to threats of violence and bombs. Defendant know very well that sending threats to those places would cause serious reactions; indeed, the hundreds of passengers on the plane were met with a full hijack response team, and several schools closed in response to the threats.  Notably, the threats to the schools were specifically designed to cause fear: the April 12 and 13, 2018 emails included a photograph of a plastic bottle ammonium nitrate/fuel oil bomb; the May 7 and 8, 2018 emails threatened that

6

bombs would be placed under school transport vehicles; and the June 26, 2018 emails threatened that two rocket-propelled grenade heads and four land mines placed on the sports field and the entrance would be detonated because of the way that the schools let boys and girls dressed, and not worship Allah.

Defendant's conduct exploited and trivialized the very real tragedies that this country has suffered in terms of terrorist attacks and school shootings.  His conduct was a dangerous distraction from the real threats that airplanes and schools face, which law enforcement expends untold resources trying to protect. And further, the citation to worshipping Allah was unmistakably offensive and designed to wrongly provoke fear in the recipients.

These were not victimless crimes, nor were they the one-off mischief caused by a youngster fooling around on the Internet.  To the contrary, these were crimes with serious implications for the victims, and which were designed to cause serious terror and panic in this country's most sensitive institutions.  The Court should impose a serious sentence, reflecting these serious offenses.

> 2.   Defendant's Child Pornography Offenses Further Perpetuated Harm Against Society's Most Vulnerable, Some of Whom Communicated with Defendant Himself

"Child pornography is a vile, heinous crime.  Mention the term to your average American and he responds with immediate disgust and a sense of unease.  However, once it enters the legal system, child pornography undergoes sterilization.  The sterilization goes far beyond properly removing emotion from sentencing decisions.  Images are described in the most clinical sense.  Victims all too often remain nameless.  The only emotions on display are those of defendants, sorry that their actions were discovered by law

1   enforcement." <u>United States v. Cunningham</u>, 680 F. Supp. 844, 847

2   (N.D. Ohio 2010).

3        The government urges the Court not to disregard the minor

4   victims of defendant's child pornography offenses.  As the Guidelines

5   calculations in this case show, defendant's acts in possessing child

6   pornography images deserve a serious sentence.  What further

7   separates this case from other child pornography possession cases,

8   however, is that defendant actually communicated directly with some

9   of the victims.[4]  The government would respectfully refer the Court

10  to the separately filed victim impact statements.  The victims'

11  statements speak loudly to the harm that the distribution of their

12  images causes and how they suffer from the crimes that defendant

13  committed.  The victims explain how they continue to be harmed, with

14  problems with their comfort with men and their fear that the pictures

15  are still circulating.  The parents write about how their children's

16  lives have been forever changed and about the prolonged trauma that

17  will haunt their children forever.  These lifetime harms suffered by

18  defendant's victims should be taken into account in fashioning a just

19  sentence here.

20        3.   <u>Defendant's Characteristics Do Not Excuse His Behavior</u>

21        Defendant is a young man who grew up with a good relationship

22  with both his parents and his stepfather.  (PSR ¶¶ 96-97.)  Further,

23  at no point during these proceedings has defendant or defense counsel

24  raised a competency defense or suggested that defendant's actions

25

26  _____

27        [4] Defendant has not been charged or pleaded guilty to a
    production of child pornography charge, which would otherwise carry a
    mandatory minimum sentence of 15 years.  The government is not
28  seeking that sentence in this case, nor is it intending to suggest
    that a sentence above the mid-point range would be appropriate.

were out of his control.  There has been no expert testimony
submitted that defendant's mental health condition caused him to
commit the crimes to which he pleaded.  Although defendant was
hospitalized as a minor for mental health issues, defendant committed
the crimes charged in this case when he was 19-20 years old, and
after deliberately choosing not to take his medications.  Indeed, as
the PSR found, defendant did not display any obvious sign of
psychological dysfunction during his video conference interview with
the Probation Officer. (PSR ¶ 110.)

Although the government acknowledges that defendant has suffered
from a variety of mental health issues, those issues do not excuse
defendant's serious crimes.  See United States v. Zuk, 874 F.3d 398
(4th Cir. 2017) (time-served sentence of 26 months in child
pornography case on the basis of defendant's autism spectrum disorder
was substantively unreasonable).  The vast majority of individuals
with mental health issues like defendant's do not conspire to send
hoax bomb threats to school, nor do they possess images and videos of
child pornography.  Defendant's conduct is the result of his
deliberate choices and disregard for the well-being of his victims.

Moreover, the record shows that defendant is actually an
extremely intelligent and capable individual.  As the PSR notes,
defendant felt "frustrated at school because he felt he knew all of
the information being taught," and he has specialized training and
skill with computers.  (PSR ¶¶ 123, 125.)  From approximately 2014-
2017, defendant was employed as a computer repair technician in North
Carolina.  (PSR ¶ 128.)  Defendant has met friends online and by
playing video games.  (PSR ¶ 126.)  Indeed, the complexity of
defendant's crimes show a concerted and deliberate effort to wreak

pain on defendant's victims.  Defendant extorted a Long Beach company and then DDoSed the company when it did not pay; he also obtained email addresses and a flight manifest in support of the hoax threats. These were not the crimes of a debilitated individual who had no other choice but to commit crimes.  These were the crimes of an individual who sought to deliberately cause harm to others.

Defendant's character is visible through his crimes.  Defendant is someone who sought to cause terror and panic in his victims, and who derived pleasure from viewing the misery of children.  In these circumstances, defendant should serve a substantial sentence for his crimes.

        4.   <u>A 78 Month Sentence Will Ensure Deterrence And Protect the Community, and Avoid Unwarranted Sentencing Disparities</u>

Defendant directly victimized multiple members of the community, ranging from minors, to airplane passengers and school attendees.  A lenient sentence here will speak volumes to defendant, who likely rationalized his behavior by disregarding the humanity of his victims through the anonymity of the Internet.  A substantial custodial sentence in this case is needed to convey the seriousness of these acts and to provide deterrence to others who might otherwise trivialize these acts.  A strong sentence would also ensure that defendant cannot engage in this conduct again and that the community is protected from defendant.  Further, the Court must sentence defendant to avoid unwarranted sentencing disparities among other defendants with similar records, who have been found guilty of similar conduct.  18 U.S.C. § 3553(a)(6).  The best way to ensure consistent sentences for similarly-situated defendants across courtrooms, districts, and the country is to apply the sentencing

1   guidelines uniformly.  United States v. Saeteurn, 504 F.3d 1175, 1181

2   (9th Cir. 2007).  Here, the government recommends a Guideline

3   sentence, which will guard against sentencing disparities.

4     **C. The Court Should Impose Lifetime Supervised Release**

5     As the U.S. Probation Officer recommends, the government concurs

6   that the Court should sentence defendant to lifetime supervised

7   release.  Congress has recognized the importance of supervised

8   release in the rehabilitation of sex offenders, as evidenced by the

9   five-year statutory minimum and lifetime statutory maximum terms

10  provided by 18 U.S.C. § 3583(k).  The same provision also provides

11  for at least five years' imprisonment -- a particularly severe

12  sanction -- for those individuals who violate the terms of their

13  supervised release by committing an additional sex offense.  Id.

14  And, as expressed by the Supreme Court, "[t]he risk of recidivism

15  posed by sex offenders is frightening and high."  Smith v. Doe, 538

16  U.S. 84, 103 (2003)  (internal quotation marks omitted); see also

17  McKune v. Lile, 536 U.S. 24, 33 (2002) ("When convicted sex offenders

18  reenter society, they are much more likely than any other type of

19  offender to be rearrested for a new rape or sexual assault.").  Given

20  the concerns with sex offender recidivism embodied in the law, a

21  lifetime of supervised release would properly afford defendant the

22  monitoring and treatment necessary to prevent future criminal

23  conduct.

24  **IV. CONCLUSION**

25    For the foregoing reasons, the government respectfully requests

26  that this Court sentence defendant to 78 months' incarceration,

27  lifetime supervised release, and impose a special assessment of $300.

28